# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**TOREY CORTEZ SMITH, #136527**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:11-cv-25-MTP**

**OFFICER BORIS DIXON, LT.**                                    **DEFENDANTS**
**EARNEST SAXTON**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the court on the Defendants' Motion for Summary Judgment
[23]. Having reviewed the submissions of the parties and the applicable law, the undersigned
finds that the motion should be **GRANTED** in part and **DENIED** in part.

FACTUAL BACKGROUND

Plaintiff Torey Cortez Smith, proceeding *pro se* and *in forma pauperis*, filed his civil
rights complaint [1] on January 18, 2011. As set forth in his complaint and as clarified during his
*Spears*[1] hearing, Plaintiff asserts claims against Officer Boris Dixon for excessive force and
denial of medical treatment and a claim against Lieutenant Earnest Saxton for cruel and unusual
punishment. *See* Case Management Order [20]. Plaintiff's claims occurred while he was
incarcerated at the Hinds County Jail.[2]  He is no longer in the custody of the Mississippi
Department of Corrections.

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on
October 4, 2011.  *See* Omnibus Transcript [37].

[2]Although Plaintiff was housed at the Hinds Country Jail awaiting trial on a charge of
uttering forgery, he had previously been convicted of another crime and was serving time on that
sentence.  *See* Omnibus Transcript [37] at 10; Ex. C to Motion [23-3] at 25. Thus, Plaintiff was a
post-conviction inmate at the time his claims occurred.

1

According to Officer Dixon's affidavit, on April 17, 2010,[3] he responded to a call that Plaintiff had flooded his cell block. The deputy on duty told him that Plaintiff had previously gotten into an argument with the nurse while she was distributing medication.[4] Officer Dixon removed Plaintiff from his cell "forcefully" because "[Plaintiff] began struggling" after Officer Dixon verbally requested he leave the cell. Officer Dixon said he had to drag Plaintiff out by his jumpsuit. *See* Ex. B to Motion [23-2] at 2-3. Plaintiff alleges that, without provocation, Officer Dixon kicked, slapped, and insulted him because "he [is] against [his] sexuality;" Officer Dixon denies striking him. *See* Omnibus Transcript [37] (hereinafter "Tr. [37]") at 11-12; Ex. B to Motion [23-2] at 3.

According to Officer Dixon, after Plaintiff cleaned up the water in the cell block, Officer Dixon moved him to a holding cell "for his own safety, as he had made the other inmates . . . angry." *See* Ex. B to Motion [23-2]. Plaintiff, however, alleges that he was the only inmate "housed in that cell block." Plaintiff's Response [34] at 1. Plaintiff further alleges that Officer Dixon called in three "goons," prison trusties, to assault him in the holding cell. Tr. [37] at 13-14.

Plaintiff testified that he requested medical attention from Officer Dixon, and that Officer Dixon then placed paper over Plaintiff's cell door window pursuant to Lt. Saxton's orders. Tr. [37] at 12, 14. According to Officer Dixon's affidavit, he put in a request for medical attention for Plaintiff, but he did not indicate that it was urgent because he "did not notice any bumps,

---

[3]There are no Use of Force Reports in the record related to April 17, 2010.

[4]Plaintiff testified that Officer Dixon came into his cell to do a search. Tr. [37] at 11. However, he claims in his Response that Officer Dixon was with the nurse while she was making her rounds. *See* Plaintiff's Response [34] at 1.

bruises or bleeding at the time." Ex. B to Motion [23-2] at 4.

The next day, Plaintiff was seen by the prison medical staff and given "some type of pain pill."[5] Ex. D to Motion [23-4] at 3. According to Plaintiff, the doctor recommended that he receive an MRI at Central Mississippi Hospital. Plaintiff did have an MRI on his right side, but he does not know the results of the MRI. Plaintiff stated that he received no further treatment beyond the pain pills given by the prison medical staff and suffered no permanent injuries from the alleged incident. Tr. [37] at 22, 26.

## STANDARD

This court may grant summary judgment only if, viewing the facts in a light most favorable to the non-moving party, the movants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the movants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d

_____

[5]Plaintiff is allergic to ibuprofen but does not remember specifically what was given to him. Tr. [37] at 22.

1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97

(5th Cir. 1994), are not enough to create a real controversy regarding material facts. "[T]he mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the

absence of proof, the court does not "assume that the nonmoving party could or would prove the

necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis

omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section

1983 "neither provides a general remedy for the alleged torts of state officials nor opens the

federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the

state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a

remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or

immunities secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. §

1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior*

liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*,

828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials

cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

"To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants'

participation in the alleged wrong, specifying the personal involvement of each defendant."

*Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Excessive Force

The Eighth Amendment protects prisoners from cruel and unusual punishment and "requires prison officials to provide 'humane conditions of confinement,' ensuring that 'inmates receive adequate food, clothing, shelter, and medical care." *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)). In order to demonstrate that a prison official violated the Eighth Amendment, the plaintiff must establish that he was deliberately indifferent to a substantial risk of serious harm. *Lefall v. Johnson*, 48 F. App'x 104, 2002 WL 31017045, at *1 (5th Cir. Aug. 20, 2002) (citing *Palmer*, 193 F.3d at 351-52). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

When prison officials are accused of using excessive force in violation of the Eighth Amendment, "the *core judicial inquiry* is . . . whether force was applied *in a good-faith effort to maintain or restore discipline*, *or maliciously and sadistically to cause harm.*" *Baldwin v.*

*Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes

from constitutional recognition *de minimis* uses of physical force, provided that the use of force

is not of a sort repugnant to the conscience of mankind." *See Copeland v. Nunan*, 250 F.3d 743,

No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson*, 503 U.S. 1 at

9-10) (internal quotations and citations omitted). The court must consider five factors when

determining whether the use of force was constitutionally permissible: "1) the extent of the

injury suffered, 2) the need for the application of force, 3) the relationship between the need and

the amount of force used, 4) the threat reasonably perceived by the responsible official; and 5)

any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d

522, 523 (5th Cir. 1992) (citing *Hudson*, 503 U.S. at 6-7).

As to the first factor, the "common-sense" standard for an injury to be more than *de

minimis* is "would the injury require or not require a free world person to visit an emergency

room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the

injury? In effect, would only home treatment suffice?" *Luong v. Hatt*, 979 F. Supp. 481, 486

(N.D. Tex. 1997); *see also Dixon v. Rushing*, No. 3:07cv379-JCS, 2009 WL 3163227, at *6

(S.D. Miss. Sept. 29, 2009) (citing *Luong*, 979 F. Supp. at 486). Plaintiff's injuries were such

that he received pain pills and an MRI was ordered by the prison medical staff because of the

reported pain in his side. However, there is nothing in the record to indicate what specifically

led the doctor to find these treatments necessary. Plaintiff testified that he suffered no permanent

or lasting injuries related to this incident.

As to the second and third factors, Officer Dixon stated that Plaintiff was "screaming and

causing an altercation in the cell block, and . . . refusing to clean the water." Ex. B to Motion [23-2] at 3. Officer Dixon decided to remove Plaintiff from his cell, and Plaintiff struggled against him, causing him to remove Plaintiff by "dragging him by his jumpsuit." *Id.*

Conversely, Plaintiff alleges that Officer Dixon came into his cell "do a search." Tr. [37] at 11. After the search, Officer Dixon began to call Plaintiff names and kicked and slapped him for no reason. Plaintiff claims Officer Dixon continued doing this on the way to the holding cell, and once in the holding cell, Officer Dixon called in his three "goons," who continued to beat Plaintiff. Tr. [37] at 11-13.

As to the fourth factor, Officer Dixon's affidavit reflects that he believed Plaintiff's actions were creating a disturbance among the other inmates in the cell block and that Plaintiff threatened to bite him if he tried to remove him and said that he had AIDS. *See* Ex. B to Motion [23-2] at 3. Plaintiff, however, claims there were no other inmates in the cell block to anger. *See* Response [34].

As to the fifth factor, Officer Dixon claims his level of force increased by increments. He first verbally requested that Plaintiff clean the cell block, to which Plaintiff responded with threats, according to Officer Dixon. He then says he went to remove Plaintiff from his cell and only after Plaintiff was struggling did he resort to "dragging him by his jumpsuit." *See* Ex. B to Motion [23-2]. To the contrary, Plaintiff claims Officer Dixon called Plaintiff names and kicked and slapped him for no reason. Tr. [37] at 11-13.

Weighing all of the above factors, the court finds that there are genuine issues of material fact as to whether Officer Dixon's use of force "was applied in a good-faith effort to maintain or restore discipline" or "maliciously and sadistically to cause harm." *Baldwin*, 137 F.3d at 838.

Officer Dixon claims he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Courts evaluating the issue of qualified immunity should conduct the following two-prong test: 1) "whether a constitutional right would have been violated on the facts alleged[;]" and 2) "whether the right was clearly established." *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir. 2002) (en banc) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). In the recent decision of *Pearson*, the Supreme Court receded from its holding in *Saucier v. Katz*, 533 U.S. 194 (2001), holding that "while the sequence [of the two-prong test] set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 129 S. Ct. at 818. "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon*, 305 F.3d at 323.

It is clearly established that inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez*, 185 F. App'x 360, 363 (5th Cir. 2006); *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995 (1992). Based on the Plaintiff's sworn allegations in his complaint, his sworn *Spears* testimony, and his Response [34] in opposition to the motion, Plaintiff has sufficiently raised genuine issues of material fact as to whether Officer Dixon applied excessive force in violation of the Eighth Amendment and whether Officer Dixon's

conduct was objectively unreasonable. *See Goffney v. Sauceda*, No. 08-20233, 2009 WL 2029812, at *3 (5th Cir. Jul. 13, 2009) (holding that plaintiff raised a genuine issue of fact as to whether excessive force was used following his arrest, accordingly summary judgment and the related issue of qualified immunity were improper); *Payne v. Dickerson*, No. 08-60416, 2009 WL 1616661, at *1 (5th Cir. Jun. 9, 2009) (affirming district court's holding that officer was not entitled to qualified immunity from plaintiff's excessive force claim, where plaintiff alleged the violation of a clearly established constitutional right not to be subjected to excessive force by police officers and where plaintiff made sufficient allegations that he suffered more than a de minimis injury as a result of the alleged excessive use of force); *Watts v. Smart*, 328 F. App'x 291, 293–94 (5th Cir. 2009) (holding that genuine issues of material fact prevented summary judgment on qualified immunity issue, where plaintiff raised genuine issues as to whether the force applied by the officers was excessive and whether their conduct was objectively reasonable).

The court concludes that Defendants' Motion [23] should be denied as to the excessive force claim against Officer Dixon because the conflicting sworn testimony concerning the incident creates a genuine issue of material fact. By concluding that genuine issues of material fact remain as to Plaintiff's excessive force claim against Officer Dixon, the court in no way determines that such claim will ultimately be meritorious.

Failure to Discipline

Plaintiff asserts a claim against Lt. Saxton for failing to discipline Officer Dixon and failing to investigate Plaintiff's grievance against him. These allegations do not give rise to a constitutional claim. *See Dehghani v. Vogelgesang*, 226 F. App'x 404, 406 (5th Cir. 2007)

(holding that plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation); *Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006); *Woodland v. City of Vicksburg*, No. 5:05cv85-DCB-JCS, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006) (stating that claim for "failure to investigate" did not amount to a constitutional violation). Moreover, Plaintiff has no constitutional right to a grievance procedure and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation)*; McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2 (S.D. Miss. March 6, 2007).

Denial and/or Delay of Medical Treatment

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837. A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* Plaintiff must "submit evidence

that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, Plaintiff's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Plaintiff alleges that Officer Dixon denied him medical treatment after the alleged assault. As set forth above, Plaintiff was seen by the medical staff the morning after the alleged incident at 8:15 and went to a hospital for further testing the day after. *See* Ex. D to Motion [23-4] at 3. Accordingly, Plaintiff was not denied adequate medical treatment for his injuries. At most, Plaintiff's medical treatment was delayed approximately fourteen hours. Moreover, a delay in medical treatment only constitutes deliberate indifference when it results in substantial harm. *Mendoza*, 989 F.2d at 195. Plaintiff has failed to show or allege that he was substantially harmed by any delay that may have resulted. He testified he was given pain pills and suffered no permanent injury. Tr. [37] at 26-27.

To the extent Plaintiff alleges a claim against Officer Dixon in his official capacity, which would in effect be a claim against the Hinds County Jail or Hinds County, Plaintiff's claim fails as a matter of law. As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver*, 276 F.3d at 742 & n.6. Further, Plaintiff has failed to allege much less demonstrate that the Hinds County Jail or Hinds County implemented a policy, custom, or practice that was the "moving force" behind the alleged constitutional violation. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Accordingly, the court concludes that Officer Dixon is entitled to judgment as a matter of law as to Plaintiff's medical claim in both his individual and official capacities.

Cruel and Unusual Punishment

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). To establish a constitutional violation for cruel and unusual punishment related to prison conditions, the court employs a two-part test. First, Plaintiff must objectively show that he has been denied a "basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (quoting *Woods*, 51 F.3d at 581). The Supreme Court has defined these basic human needs as "food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *Deshaney v. Winnebago County Dep't Of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)). Second, Plaintiff must establish subjectively that the "responsible prison official acted with deliberate indifference to his conditions of confinement." *Harper*, 174 F.3d at 720.

It is undisputed that Officer Dixon covered the window of Plaintiff's holding cell with a piece of paper. Officer Dixon states that he did this to block out the light from the hallway so

that Plaintiff would "calm down and get some sleep that night." Ex. B to Motion [23-2] at 4.
Officer Dixon also made a hole in the paper so that Plaintiff could see out and the officers could
see in. Plaintiff claims that doing this upset him, and Officer Dixon put up the paper in an effort
to abandon him. Tr. [37] at 19. Plaintiff further claims that Lt. Saxton ordered Officer Dixon to
cover the window with paper, Tr. [37] at 14, which Officer Dixon denies, Ex. B to Motion [23-2]
at 4.

Even if Plaintiff's allegations are true, the claims fail as a matter of law. Covering the
window with paper does not amount to a deprivation of any of Plaintiff's basic human needs.
Moreover, Plaintiff suffered no injury as a result. He testified this upset him "a little." Tr. [37] at
19. Plaintiff was not abandoned but received medical care early the next morning. *See* Ex. D to
Motion [23-4] at 3.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary
Judgment [23] should be granted in part and denied in part. Accordingly,

IT IS, THEREFORE, ORDERED:

1.      That the Defendants' Motion for Summary Judgment [23] is DENIED as to
        Plaintiff's excessive force claim against Boris Dixon and a trial on this claim will
        be set by separate order.

2.      That the Defendants' Motion for Summary Judgment [23] is GRANTED as it
        relates to Plaintiff's claims for the denial and/or delay of adequate medical
        treatment against Boris Dixon and as to all claims against Earnest Saxton; these
        claims are dismissed with prejudice.

13

SO ORDERED this the 27th day of July, 2012.

s/Michael T. Parker
United States Magistrate Judge